STONE *v.* FOX MACHINE CO.[1]

1. PRINCIPAL AND AGENT—ACCOUNTING—CLOSED TRANSACTIONS.
Where differences arising between a manufacturer and his agent are closed and settled at the time the agent enters into contract relations with the incorporated successor of the manufacturer, such differences cannot be made the basis of a claim against either the manufacturer or the corporation in a bill subsequently filed for an accounting.

2. SAME — CORPORATIONS — TRANSFER OF INTEREST BY PRINCIPAL.
Where the business of a manufacturer having an agent is merged into a corporation, and the agent continues dealing with it and its successor, the manufacturer is not a proper party to a bill for an accounting by the agent calling in question the transactions with the corporations.

3. SAME—CONTRACT—SETTLEMENT OF DIFFERENCES.
Where existing differences between principal and agent are settled at the time of entering into a new contract, such differences cannot be subsequently called in question.

4. SAME—CONTRACT—EXCLUSIVE REPRESENTATION—CONSTRUCTION.
A contract between a manufacturer and its foreign agent examined, and *held,* to contemplate that the agent should be the exclusive foreign representative of the principal, and that it should make its sales through him.

5. SAME—EXPIRATION OF CONTRACT—NOTICE.
A contract of agency for the term of three years and from year to year thereafter until terminated by six months' written notice, examined in connection with the notices given, and *held,* to have terminated on the first anniversary of its making after notice given more than six months prior thereto, and not before.

6. CORPORATIONS—CONTRACTS BEFORE ORGANIZATION—LIABILITY.
Where a manufacturing corporation having a selling agent reorganized in the form of a limited partnership association, and thereafter did business with the agent in accordance with the terms of his contract with the corporation, the association is not liable to the agent for any breach of the con-

[1] Rehearing denied November 7, 1906.
145 MICH.—44.

tract committed by the corporation, nor is the corporation liable for breaches by the association.

7. PRINCIPAL AND AGENT—CONTRACT—CONSTRUCTION.

A contract appointing a selling agent, and providing that the principal shall not advertise in European papers without including the agent's name and address as sole European agent, does not prevent the principal from advertising in American papers printed in this country without including the agent's name.

Appeal from Kent; Perkins, J. Submitted June 7, 1906. (Docket No. 46.) Decided September 20, 1906.

Bill by James B. Stone against the Fox Machine Company, William R. Fox, and the Fox Typewriter Company, Limited, for an accounting. From a decree for complainant, defendants appeal. Reversed, and bill dismissed.

*Henry B. Fallass*, for complainant.

*Butterfield & Keeney* and *Clapperton & Owen*, for defendants.

HOOKER, J. William R. Fox was carrying on the business of manufacturing machinery tools, among which was a trimmer which he had invented, and Stone, the complainant, was his traveling agent. In 1890 Stone went to England to introduce the trimmers there, under an arrangement with Fox, which need not be stated in detail. Whatever it was, he found the opening such as to induce him to enter business there as an independent dealer, associating with one Stanton, whom he supposed and represented to Fox to be able and willing to furnish the necessary working capital, and business was afterwards done with them under the firm name of "J. B. Stone & Co." This arrangement began about March 1, 1891. The new firm did business until some time in 1892, when Mr. Stone succeeded to its business and made a written contract with the Fox Machine Company, a corporation, which had been organized meantime, and which appears to have continued to do business with Fox and

Stanton after it began business, as the successor of Fox. The date of its organization may be stated in the record, but we do not readily find it, and it is not very important.

The contract of October 11, 1892, was in writing and was made in pursuance of an adjustment of differences between the parties while Stone was in America in 1892, where he was sued by the machine company, or Fox, upon the Stone & Co. account. Stone did business under this writing for some years. It is claimed that this contract expired by its own limitation in 1894. However that may be, the parties continued to do business upon substantially unchanged terms until 1897. There was much complaint of Stone's failure to pay for his purchases, and in 1897 the Fox Machine Company refused to give him further credit. This resulted in an arrangement whereby the Fox Machine Company made one Mahoney, of London, their agent; he becoming responsible to them for goods sold him. Mahoney made a contract with Stone, agreeing to continue the arrangement of the Fox Machine Company as to giving him the sale of trimmers in territory named, which, in this contract (which was in writing), did not include Germany. It is claimed that it was afterwards included under a later concession, which appears to have been oral, if it was made, so far as we can ascertain from the evidence. This arrangement ended in trouble between the Fox Machine Company and Mahoney in 1898, or 1899, and he became largely indebted to the Fox Machine Company, a large portion of which indebtedness it never collected.

In 1899 Stone owed Mahoney $6,000 or over, and Stone also owed the Fox Machine Company something more than that, according to its claim. In June, 1899, Mr. Widdicomb, a director of the Fox Machine Company, went to London, carrying an assignment to his company of the Mahoney claim against Stone, and he and Stone made a settlement, whereby a new contract was made on June 14, 1899. At that time Stone paid in cash the assigned claim, and for all goods shipped him after Maho-

ney ceased to do business. All subsequent purchases were thereafter paid for in cash, as had been arranged prior to the making of this contract. The Fox Typewriter Company, Limited, was a limited partnership association organized May 1, 1902, and succeeded to the business of the Fox Machine Company. It continued the sale of goods to the complainant. There was a steady falling off in his purchases and much correspondence grew out of this and of his claim that the company was selling goods to other persons and dealers in Europe, and otherwise breaking the contract. On November 7, 1903, a letter signed " Fox Typewriter Company, Ltd.," was sent to complainant, stating that the contract had expired. This was in reply to some charge that the contract was not being lived up to by the company.

On February 9, 1904, a letter signed " Fox Machine Company," was sent. It was received by Stone March 5, 1904. It was as follows:

" Messrs. J. B. STONE & Co.
          " Finsbury Pavement,
                    " London, Eng.
    " *Gentlemen:* In respect to the so-called agreement bearing date June 15, 1899, signed Fox Machine Company, by John Widdicomb, and J. B. Stone & Company, upon which you have commenced suit here, we desire again to state what we have heretofore repeatedly stated to you, that the Fox Machine Company went out of business in May, 1902; that the Fox Typewriter Company, Limited, an independent organization, purchased most of its assets and continued the manufacture of machinery theretofore made by the Fox Machine Company, but never knowingly took over or assumed any rights or obligations under the aforesaid agreement, and has not knowingly or intentionally recognized it in any manner. To avoid any possible future misunderstanding in regard to that agreement we hereby repeat the notice that has already been given to you; and in case said agreement should be held to be in any way binding upon the Fox Typewriter Company, Limited, it is hereby declared terminated and canceled, and further, that the prices and terms for goods as mentioned therein, are and will be

changed in accordance with quotations already sent you or that may be sent from time to time."

This suit had been commenced when the letter was written. The bill made Fox, the Fox Machine Company, and the Fox Typewriter Company, Limited, defendants.

It alleged that the several defendants failed to perform the contracts mentioned, and that by reason thereof the business of the complainant had been injured and crippled, and that he had suffered damage by reason thereof; that Fox was in reality the owner of all or substantially all of the stock in and controlled by the policy of the Fox Machine Company and the Fox Typewriter Company, Limited; and that the organization of the latter was a fraudulent device of Fox to avoid the contract between complainant and the Fox Machine Company. It prayed:

(*a*) That the defendants be ordered to come to a fair and just accounting, touching the amount due to complainant, by reason of the misconduct aforesaid, and that they, or some of them, be decreed to pay the amount found due him; (*b*) that the defendants be required to disclose the whole extent of their business in Europe in said trimmers since April, 1897, with persons other than complainant and Mahoney; (*c*) that Fox be decreed to be a party to all of the contracts mentioned; (*d*) that the Fox Typewriter Company, Limited, be decreed to be a party to the contract of June 14, 1899, instead of the Fox Machine Company; (*e*) an injunction against the further sale of trimmers for sale in Europe, and the quotation of prices to any one except complainant; (*f*) that the injunction be continued in force until the contract should be terminated by proper notice; (*g*) that it be decreed that advertising by defendants in Europe was fraudulent in not mentioning complainant as "sole agent in Europe," and that each defendant be decreed to pay the amount of damage done by him to complainant.

The complainant obtained a decree for several thousand dollars damages against all defendants, and they have appealed.

As the defendants answered and went to hearing upon the merits without objection to the jurisdiction or plead-

ings, we shall discuss no such questions. This should not be construed as an intimation that this is a contract susceptible of enforcement specifically, or that equity is a proper forum for the recovery of damages for breach of contract. We do not pass upon these questions, as they have not been presented to us. An examination of the record has convinced us:

1. That the transactions with Fox were closed and settled at the time relations between the complainant and the Fox Machine Company began, and that complainant has no just claim arising out of such transaction against any of the defendants.

2. That the Fox Machine Company was a lawful corporation, and that after its organization the dealings of the complainant were with it, or its successor, the Fox Typewriter Company, Limited, and not with Fox personally. It follows that the bill of complaint should have been dismissed, with costs, as to Fox, whatever the conclusion should have been as to the liability of other defendants.

3. That the differences between complainant and the Fox Machine Company were settled at the time that the contract of June 14, 1899, was made. It follows that earlier transactions cannot be the subject of damage.

4. The writing of June 14, 1899, was made at a time when the parties were at variance over the delay of the complainant in paying for goods, and the question of his right to be the sole representative of the Fox Machine Company in Europe, which the latter had repeatedly and strenuously denied in its correspondence, on the grounds, *first*, that it had not agreed to make him its sole representative; and, *second*, that while it had been willing to forego selling to others so long as he should reasonably push sales in the respective countries he had not done so, although it had persistently and repeatedly urged him to do so.

At this time it was requiring payment for the goods before delivery, and that practice was adhered to afterward. The writing is as follows:

"June 14th, 1899.

"It is hereby understood and agreed between John Widdicomb, representing the Fox Machine Co., and J. B. Stone & Co., that the said J. B. Stone & Co. shall

continue to be the sole agents for the Fox Machine Company for the sale of Fox trimmers throughout the United Kingdom and Europe, and that they are to prosecute the business of selling trimmers and further the interests of the Fox Machine Co. faithfully as in the past; such agency to continue for the term of three (3) years and from year to year thereafter until terminated by either party by giving six (6) months' written notice posted in a registered letter in London by J. B. Stone & Co., or in Grand Rapids by the Fox Machine Co. The said J. B. Stone & Co. are not to handle any other conflicting machines, and they are to anticipate their wants in the line of goods to be furnished by the Fox Machine Co., as far in advance as possible, in order to give the Fox Machine Co. reasonable time in which to execute their orders.

" The prices and terms at which goods have been sold to J. B. Stone & Co. so far during the present year, shall govern for the term of one year from this date, and no change shall be made at the expiration of the said one year unless three (3) months' previous notice is given and a written notice to this effect posted in Grand Rapids, by registered letter, which letter shall be considered as received in London on that date, should the same be received and receipted for. After the expiration of such term, six (6) months' notice must be given as above. It is the intent of the Fox Machine Co. that no advance is to be made in price unless the cost of labor and material increase over the cost of labor and material at the date of this agreement.

" It is understood that the Fox Machine Co. do no advertising in any European papers without including the name and address of J. B. Stone & Co. as their sole European agents, the intention being to bring before the public of the United Kingdom and Europe the fact that J. B. Stone & Co. are the sole agents for the Fox Trimmers in such territory, and that all inquiries from such territory received by the Fox Machine Co. shall be referred to J. B. Stone & Co. and that the Fox Machine Co. will not knowingly supply any trimmers to any person or persons in that territory excepting through J. B. Stone & Co.

" It is further understood that the name and address of J. B. Stone & Co., as sole European agents, shall be by nameplate or other suitable manner affixed to each trimmer, furnished to J. B. Stone & Co. excepting it may be

in the case of machines now on order in course of construction, which cannot be so labeled on account of lack of time.

                    "Fox Machine Company,
                              "By John Widdicomb.
                    "J. B. Stone & Co.
"Witness: E. M. Kennedy."

We agree with the circuit judge that the contract of 1899 contemplated that complainant alone should be the representative of Fox Machine Company, to the exclusion of others, and obligated it to make its sales of trimmers through him, and that the notice given terminated such contract on June 14, 1905, and not before. The Fox Typewriter Company, Limited, was a legal partnership association, and it appears to have been willing to carry on the business of the machine company under its contract, and we think it made the performance of such contract, as to all sales made by it, its own, but we discover nothing warranting the inference that it can be made liable for any prior transactions. On the other hand, it gave complainant a right to understand that it was willing to continue business under such contract to which he appears to have consented, and therefore he can have no valid claim against the Fox Machine Company upon such transactions.

It is unnecessary to include in this opinion an analysis of the evidence. It would require many pages, and would not elucidate any legal question. We have endeavored to examine it critically, with a view to a disposition of the meritorious questions involved. We do not discover that the defendant "Fox Typewriter Company, Limited," ever refused to sell its trimmers to complainant, and we think that his claim that it unreasonably raised the price is not sustained by the proof. We are also of the opinion that the proof shows that the complainant did not use such diligence in the countries of the continent as the terms of the contract required, and that to this fact, and the further fact that he was unwilling to make a price upon the trimmers that would enable him to sell them in

competition with other similar goods of other makes, his failure to obtain business upon the continent was due. The record is full of testimony indicating a sincere desire on the part of the defendants to protect complainant, and to aid him, and not to undermine him, and that they made but few sales where the goods went to the continent, and that these in no sensible degree lessened his profits, or his prospective business.

The claim that the contract required the defendants to advertise complainant as sole agent in Europe is untenable. It did provide that they should not advertise in *European papers* without including his name and address as sole European agent. We construe this to mean papers printed and published in Europe, and not American papers printed in this country. We are of the opinion that the testimony shows no breach of this agreement entitling complainant to damages. There was no occasion for the preliminary injunction.

The bill will therefore be dismissed as to all defendants, with costs of both courts.

CARPENTER, C. J., and McALVAY, GRANT, and MOORE, JJ., concurred.